## Case No. 3,581.

### DARST et al. v. DUNCAN.

[2 Law Rep. 357.]

Circuit Court, E. D. Pennsylvania. Nov., 1839.

IMPRISONMENT FOR DEBT — DISCHARGE BY STATE JUDGES — CONSTRUCTION OF THE ACT OF CONGRESS OF MAY 19, 1828 [4 STAT. 281], SECTION 3.

1. State insolvent laws have no operation, proprio vigore, upon the process and proceedings of the courts of the United States.

2. The act of congress of May 19, 1828 [4 Stat. 281], did not adopt the provisions of the Pennsylvania insolvent law, passed in 1820, and make them the law of the courts of the United States in Pennsylvania.

3. In an action against a sheriff for an escape of a prisoner committed on execution for debt, issued from the United States circuit court in 1832, it was *held* to be· no defence, that the prisoner was discharged by virtue of the insolvent law of the state.

[See note at end of case.]

The plaintiff in this case [Isaac Darst], having a judgment in this court against Jacob Roth, on which there was a balance due of $2,000.43, took out a capias ad satisfaciendum against the defendant in the judgment, who resided in York county, Pa. He was arrested by the United States marshal for that district, on the 6th of December, 1832, and committed to jail in York county, and on the day following was at large. Darst then brought this suit against the defendant [Andrew Duncan], who was the sheriff of York county, for an escape. The justification set forth by the defendant's plea was, that Roth

had been discharged from jail by the judges of the court of common pleas of York county, upon his application and compliance with the Pennsylvania insolvent law. And further, that by act of congress, approved May 19, 1828, the said law of Pennsylvania was considered the law of the land so far as regards the several courts of the United States in the state of Pennsylvania. To this plea the plaintiff demurred, and the defendant joined in the demurrer.

T. C. Hamley and C. Wheeler, for plaintiff.

A. C. Ramsay and J. M. Read, for defendant.

HOPKINSON, District Judge. If the matters set out in the defendant's plea can avail him to defeat the plaintiff's action, it must be by virtue of some act of congress of the United States. It is now settled so as no longer to be a subject of debate, that "state insolvent laws have no operation, proprio vigore, upon the process and proceedings of the courts of the United States." This is the language of Judge Story, delivering the opinion in the supreme court in the case of Beers v. Haughton, 9 Pet. [34 U. S.] 359, and he there refers to various decisions of the same court, in which the same doctrine is declared, particularly to the leading cases of Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 200, and Ogden v. Saunders, 12 Wheat. [25 U. S.] 213. The opinion in Ogden v. Saunders is affirmed, and the principles there established are considered to be no longer open to controversy; the decrees of the court upon the effect of state insolvent laws are to be deemed final and conclusive. In the decision of Beers v. Haughton, the language of the court is particularly strong and explicit. "State laws," it is said, "cannot control the exercise of the powers of the national government, or in any manner limit or affect the operation of the process or proceedings in the national courts. The whole efficacy of such laws in the courts of the United States depends upon the enactments of congress. So far as they are adopted by congress, they are obligatory. Beyond this, they have no controlling influence." In referring to the cases of Wayman v. Southard [10 Wheat. (23 U. S.) 1], and Bank of U. S. v. Halstead [10 Wheat. (23 U. S.) 60], the court say, "It was then held that this delegation of power by congress was perfectly constitutional; that the power to alter and add to process and modes of proceeding in a suit, embraced the whole progress of the suit and every transaction in it from its commencement to its termination, and until the judgment should be satisfied, and that it authorized the courts to prescribe and regulate the conduct of the officers in the execution of final process, in giving effect to its judgment." It must be borne in mind hereafter, that this power is limited to proceedings in the suit, to transactions in it, and to the conduct of the officers of the court, in the execution of

the final process of the court to give effect to the judgment of the court. It is added that this power of the courts of the United States "enables the courts of the Union to make such improvements in its forms and modes of proceeding as experience may suggest, and especially to adopt such state laws on this subject, as might vary to advantage the forms and modes of proceeding which prevailed in September, 1789;" and further "that the courts may, by their rules, not only alter the forms, but the effect and operation of the process, whether mesne or final, and the modes of proceeding under it." We must observe, as particularly affecting the case now before this court, the example given as explanatory of this doctrine, "so that it may read property not liable in 1789, by the state laws to be taken in execution, or may exempt property which was not then exempted, but has been exempted by subsequent laws." This is the language of the supreme court in an examination of the act of congress, we have to consider. It is true the case in the supreme court turned upon the construction of a proviso in the act, which has no bearing upon our case, as this court has made no such rule as is mentioned in that proviso. My object in referring to the opinion in Beers v. Haughton, is to show, that no court of the United States, nor any state legislature, can exercise the power claimed over the process and proceedings of the courts of the United States, which is a power over the rights of the suitors in those courts, but by and under the authority of an act of congress. The supreme court of Pennsylvania have unequivocally adopted the decisions of the courts of the United States, in relation to the effect of state insolvent laws, upon the process of the courts of the United States. In Duncan v. Klinefelter, 5 Watts, 142, the supreme court of this state say, "The provisions of the act of assembly (for the benefit of insolvents) relate only to debtors held under executions issued from the state courts. It has never been supposed that they intended to give to the state courts or judges power to control the process of the United States acting within the jurisdiction of the latter." It is equally clear, that the order of a state judge to discharge a debtor from imprisonment by virtue of an execution from a court of the United States will afford no protection or defence for the sheriff or jailor who discharged him, if the judge in making the orders exceeded his jurisdiction. The object and design of the acts of congress, for there have been several, to regulate the process of the courts of the United States, have been to conform the process and the proceedings of their courts to the process and proceedings of the states, but beyond that. no act of congress has pretended to go, either in giving power to their own court, or in adopting state laws and regulations. It was the intention of congress that the process and mode of proceeding in the courts of the United States should be in harmony and uniformity with those of each particular state in which the courts of the United States were held. Thus, if in any state the defendant could not be arrested or held to bail on mesne process from a state court, he would have the same privilege against process from the court of the United States. If on final process of execution the person of the debtor could not be taken and imprisoned by the laws of the United States, he had the like exemption from final process issued from the courts of the United States; that is, if such exemption were given by state laws in force at the time of the passing of the law of congress, which was presumed to embrace or adopt the state law, but not to be extended to regulations which might be subsequently made by state legislatures.

The question we have to decide results in the inquiry, whether the discharge of Jacob Roth from imprisonment by the order of an associate judge of York county, according to the provisions of an act of assembly for the relief of insolvent debtors of Pennsylvania, passed on the 28th day of March, 1820, was or was not authorized by the act of congress of the 19th of May, 1828. If the act of congress adopted the provisions of the act of assembly, and made them the law of the courts of the United States, then the defendant was warranted in discharging Roth from his imprisonment, and the order of the judge will afford him protection and defence against the claim of the plaintiff in this suit. If, on the other hand, the act of assembly has not been adopted and made the law of the courts of the United States in Pennsylvania, then the order of the state judge was an act beyond his jurisdiction, and will not avail the defendant against the claim of the plaintiff. The section of the act of congress of 1828, applicable to this case, is as follows: "That writs of execution and other final process, issued on judgments and decrees rendered in any of the courts of the United States, and the proceedings thereupon shall be the same except their style in each state respectively, as are now used in the courts of such state, saving to the courts of the United States, in those states in which there are not courts of equity, with the ordinary equity jurisdiction, the power of prescribing the mode of executing their decrees in equity by rules of court." The plea of the defendant avers that by an act of assembly of the commonwealth of Pennsylvania, approved on the 28th day of March, 1820, a debtor held in execution in a civil suit, may apply when arrested in execution, to the president or any associate judge of the court of common pleas of the county in which the suit was instituted, and give bond to the plaintiff, with sureties, to be approved by the judge, with the condition that the debtor shall appear at the next court of common pleas for the said county, and take the benefit of the insolvent laws of the commonwealth, &c., &c. Whereupon

the said judge shall give an order to the sheriff, constable, or other person having said debtor in custody, to forthwith discharge him. The plea then avers, that by the third section of the act of congress of the United States, of the 19th of May 1828, the said act of assembly and the provisions aforesaid, became the law of the court of the United States, in the state of Pennsylvania. It is then averred that Jacob Roth, being arrested on execution, applied to a judge of the court of common pleas of the county in which he was arrested, and, having complied with the directions and provisions of the act of assembly, was discharged out of custody by the order of the judge. Taking it, for the present, for granted that the application for the benefit of this law was properly made to the state judge, although the suit was not instituted in the county in which he was a judge, I will enquire whether the case of Jacob Roth is embraced by the act of congress; in other words, whether the defendant has maintained the allegation of his plea, that "the said act of assembly and the provisions aforesaid became the law of the courts of the United States in Pennsylvania."

The law of congress enacts, that "writs of execution, and other final process issued on judgments and decrees rendered in any of the courts of the United States, and the proceedings thereupon shall be the same, except the style in each state respectively, as are now used in the courts of each state." The process here was a capias ad satisfaciendum. It was executed upon the person of the defendant, and he was committed to prison, as he might have been by the existing law of the state. In all these proceedings, the directions of the act of congress were strictly complied with, and the execution was duly and legally served by the arrest and imprisonment of Jacob Roth. The whole defence in this case must depend upon the meaning and construction which shall be given to the words of the act of congress, "and the proceedings thereupon;" that is, the proceedings upon writs of execution or other final process issued, or judgment rendered in the courts of the United States. Was the application of Jacob Roth to the judge of York county for the benefit of the insolvent laws of Pennsylvania, a proceeding upon the writ of execution, under which he was imprisoned in the jail of the county of York? Was it a proceeding in any manner under the direction or control of the court which issued that writ of execution? Or had it any necessary or legal connection with that execution so as to be legally, or properly speaking a "proceeding thereupon?" Was it not altogether a new proceeding under the authority and direction of another tribunal, for an object not only different from, but adverse to, the proceeding in the court of the United States and the judgment then rendered and the process issued for the satisfaction of that judgment? If, indeed, a state law had enacted that no

debtor should be arrested or imprisoned by any final process or execution upon a judgment obtained against him, the courts of the United States, in common with those of the state, would have been bound so to alter their final process and the "proceedings thereupon," which is their direction to their officer, that the person of the debtor should not be arrested or imprisoned under it, but the process in this case did rightfully and lawfully order the officer to take the debtor and commit him to prison; the writ was a lawful one, and the proceeding upon it by the officer was lawful; the command of the writ was fully obeyed, and the duty of the officer performed and fulfilled by committing the defendant to the jail of the county of York. When that was done, both the writ and the officer of the court had exhausted their power, and done all they had to do in obedience to the command of the court. The proceedings upon the judgment and execution are the proceedings of the plaintiff in the suit, and of the court by which the judgment was rendered, and are under their direction and control, and the plaintiff and the court were bound by the act of congress to conform them to similar proceedings in the court of Pennsylvania. But after the writ of execution and the proceeding upon it had been thus executed, and the defendant was committed to prison by virtue of it, another proceeding was instituted by the action of the defendant for his own benefit, and commenced and pursued by his own will wholly independent of the plaintiff or the court, whose process had confined him, and being no proceeding by them, by their order, or for the execution or satisfaction of their judgment, how can it be said to be a proceeding upon that execution, by which must be understood a proceeding for the furtherance of the object of that execution; a proceeding to obtain the payment or satisfaction of the judgment for which the execution was issued? It is true, that the execution of this final process upon the person of Jacob Roth, was his inducement to apply to the judge of a state court for the benefit of a state insolvent law. It was the necessity, which drove him to this relief, but it was nevertheless, no proceeding upon the process, either legally speaking or in common parlance. In truth, when the application was made by Jacob Roth to the judge of York county, the capias ad satisfaciendum was functus officii; it had no longer any legal existence or vitality; it had fulfilled its duty; there was an end of it, and no future or further proceeding could be had upon it or by its virtue. When a defendant is taken on a ca. sa., it is as to him considered in law a satisfaction of the debt. If the plaintiff consent to his discharge even on a promise not afterwards performed, he cannot resort to his judgment again. So far was this doctrine once carried, that if a defendant taken on a ca. sa. died in prison, the plaintiff had no further remedy. By a

statute, this injustice was redressed, and a plaintiff was allowed to have process against the goods of a debtor dying in prison. If a party taken on a ca. sa. escape or be rescued, he cannot be retaken on the same writ, but the plaintiff must sue out a new execution: so entirely is the first writ extinguished or defunct by the arrest and imprisonment of the defendant.

A reference to several decisions of the supreme court of the United States will, I think, fully support my construction of the act of congress of 1828, in the use of the words "process and proceedings thereupon." Some of these opinions, it is true, were antecedent to the passage of that act, but they relate to expressions in other acts of a similar import, and in some instances the same. In delivering the judgment of the court in Wayman v. Southard, 10 Wheat. [23 U. S.] 27–32, the chief justice is very particular in giving the construction of the phrases "modes of process," and the "forms and modes of proceeding in suits," and says that "the last embraces the whole progress of the suit and every transaction in it, from the commencement to its termination." "It may then, and ought to be understood as prescribing the conduct of the officers in the execution of process, that being a part of the proceedings in the suit." Must we not conclude from this, that when the officer has executed the final process, the proceedings in the suit are ended? In U. S. Bank v. Halstead, 10 Wheat. [23 U. S.] 60, Judge Thompson, speaking for the court, says: "The general policy of all the laws on the subject is very apparent. It was intended to adopt and conform to the state process and proceedings as a general rule." And on page 61: "The power given to the courts over their process, is no more than authorizing them to regulate and direct the conduct of the marshal in the execution of the process. It relates, therefore, to the ministerial duty of the officer." Again at page 64: "An execution is the fruit and end of the suit; all the proceedings on the execution, are proceedings in the suit." "The court will enforce upon the officer a compliance with his duty, and a due execution of the process according to its command."

I have already referred to the case of Beers v. Haughton, for another purpose. At page 362 of 9 Pet. [34 U. S.], there is a passage in the same case which applies to the question I am now considering. The court are discussing the act of congress of 1828, on the meaning of which, the decision of our case must depend; and giving their construction of the words "the proceedings on writs of execution and other final process." They say, "They must, from their purport, be construed to include all the rights, duties, and conduct of officers in the service of the process, according to its exigency, upon the person or property of the execution debtor." Thus far, this construction relates only to

the rights and duties of the officer; in what follows, we see what is provided for the execution debtor: "And also all the exemptions from arrest and imprisonment under such process enacted by those laws." Can the defendant in this case contend that by the laws of Pennsylvania, Jacob Roth was exempted from arrest and imprisonment by the marshal under the process in his hands which he was commanded to execute? Did the marshal in the service of that writ violate any privilege or exemption to which Jacob Roth was entitled by the laws of the state? Certainly he had no such exemption or privilege. Certainly it was right and lawful for the officer of the court of the United States to arrest and imprison him, and having done so, there was an end to his duty, to his responsibility, and to his power over the person of the debtor, or of the writ by virtue of which he was imprisoned. There is a manifest distinction between an exemption of the person of a debtor from arrest and imprisonment, and his liberation from confinement after he has been legally arrested and imprisoned. The first is a regulation of the process and proceeding of the court and its service, the other is a new power and proceeding for the relief of the debtor from the effects of the process by which he was imprisoned. But by an act of the assembly of Pennsylvania, a debtor arrested and held in execution may apply to a judge of the court of the county in which the suit was instituted, and upon his complying with the requisitions of the act, the judge shall give an order to the sheriff to discharge him, and the sheriff shall be exonerated upon his making return of said order, or the process under which the said debtor was held in custody. It is difficult to apply the words or provisions of this act to process from a court of the United States executed by the marshal of that court, and to which he may have already made his return. But putting aside this difficulty, it is undeniable, and so treated in the defendant's plea, that unless this law of the state is extended to the court of the United States by the act of congress of May, 1828, it cannot be applied to the process of those courts, nor afford any defence against the suit of the plaintiff here, and it is equally undeniable that the law of the state is not thus extended, unless it be so by force of the enactment in the act of congress, that, "writs of execution and other final process on judgments in the courts of the United States, and the proceedings thereupon shall be the same as are now used in the courts of the state." If, therefore, I have succeeded in showing that Roth's application to a state judge for the benefit of the state law cannot be considered as a proceeding upon the writ of execution which issued from this court, and was duly executed by the officer of this court, I have demonstrated that the discharge of Roth from his imprisonment by the defendant, was unau-

thorized, and of course that he must answer for it to the plaintiff in this suit. When we speak of a proceeding upon a writ, we intend something done in pursuance of it, under its command and authority. If we go farther than this, I know not where we shall find a limit. May we follow the imprisonment into all its consequences, and call them proceedings upon the writ of execution? The application of the debtor for the relief afforded by a law of Pennsylvania, was no part of the proceeding upon the final process of this court, nor had it any relation to the duty of the officer of the court in executing that process. The manifest object and effect of the plea before us, and of the argument by which it has been supported, are that, under a law of congress to "regulate processes in the courts of the United States," we shall introduce by construction an insolvent law of Pennsylvania as obligatory upon the court of the United States, which insolvent law has never been recognized or adopted by any act of congress, unless it can be implied from the words in the act I have so often alluded to. Thus a suitor in a court of the United States is to be defeated in his right, and deprived of the remedy for the satisfaction of his judgment, to which by the laws of the United States he is entitled, by the action of another court, and the operation of a state law which has "no operation, proprio vigore, upon the process and proceedings of the courts of the United States," nor consequently upon the rights and remedies of the suitors in those courts. Congress has not left the case of a debtor imprisoned under an execution unprovided for. A law of the United States has provided a means of relief for persons imprisoned for debt on process of execution from any court of the United States. What are we to do with this law with the construction now put upon the process act of 1828, which will entirely supply and supersede in practice the act of January, 1800 [1 Stat. 4], "for the relief of persons imprisoned for debt?" One of the counsel for the defendant has argued that this law is repealed by the act of 1828. I see nothing to warrant this conclusion, and certainly the judges of the United States have continued to act under the law of 1800, without a suspicion that it was repealed. It may indeed be said that if we adopt the construction of the defendant of the act of 1828, the law of congress for the relief of imprisoned debtors will seldom, if ever, be resorted to, if the debtor can obtain the more extensive relief of the state law.

It will be observed that this case differs from that of Beers v. Haughton [9 Pet. (34 U. S.) 359] in some important particulars: 1. The insolvent, Harris, was never arrested on the ca. sa. issued against him at the suit of Beers, and of course was not imprisoned under that process. Before the commencement of the suit against Haughton, as the bail of Harris, Harris had been duly discharged from imprisonment from all his debts by the insolvent law of Ohio, and it was to the action thus brought on his recognizance, that he pleaded the discharge of Harris by that law. It was not a case in which the defendant had been duly arrested and imprisoned by the final process of the circuit court, and was released from imprisonment by a subsequent order of a state court under a state law. 2. The rule of the circuit court of the United States for the state of Ohio, has not been adopted here, nor any similar one ordered. Indeed, there is no occasion for any rule on the subject, inasmuch as the law of Pennsylvania was enacted long prior to the act of congress, under which that rule was made to provide, I suppose, for state laws that might be afterwards enacted, but that existing state laws are to be judged by the act itself, which cannot be changed or affected by any rule of court. In our case, therefore, we must rest upon the enactments of the act of congress of May, 1828, and if that act did not authorize the release of Roth from his imprisonment, the defendant can obtain no protection from it. It is true the terms of the rule of court in Ohio are that, "under neither mesne or final process shall any individual be kept in prison, (not shall be imprisoned) who, under the insolvent law of the state has, for such demand been released from imprisonment." This rule goes beyond the case of Beers v. Haughton, and if we had the same rule it would probably embrace the case before us. It greatly enlarges the privilege of the debtor as given to him by the act of congress, according to my construction of it, which I have already explained, and will by a rule of court, give an effect to state laws enacted subsequent to the act of congress, stronger than is given by the act to such laws then in existence.

It is not for me, at this time, to inquire whether the proviso in the act of congress which gives a power to the court of the United States so far to alter their final process as to conform to any change which may be adopted by the legislatures of the respective states for the state courts, was intended only to give to subsequent state laws the same effect in the form and execution of the process of the United States, as the act of congress gave to the state laws then in existence, or whether it was intended to allow the courts by their rules to enlarge the privilege given by the act, so as not only to conform their process to the process of the state, but to release a debtor who had been legally and duly imprisoned according to the commands of the process of the court, which process was in conformity with that of the state court. Such, it seems to me, would be the effect of a rule that no man should be kept in prison who had been discharged by a state insolvent law. This question would have arisen in the case of Beers v. Haughton [supra], if Harris had been taken and

imprisoned under the ca. sa. of the court of the United States, and had been afterwards released by a law of Ohio passed after the execution of that process. Such, however, was not that case, nor does the decision of the supreme court touch that question.

In my opinion, the judgment on this demurrer must be entered for the plaintiff.

[NOTE. Defendant afterwards moved that judgment should be entered only for the debt, without interest, and the court held that plaintiff had a right to a judgment for the debt and costs, and no more. Case No. 3,580. The case was then taken on writ of error to the supreme court, where the judgment was affirmed on the ground that one imprisoned on process from a federal court cannot legally be discharged by a state officer acting under a state insolvent law. 1 How. (42 U. S.) 301.]